FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO
04 OCT 12 PM 4:01
CLERK-ALBUQUERQUE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THE UNITED STATES OF AMERICA for
the use of PROTEK CONTRACTORS, INC.
d/b/a Budget Plumbing, f/k/a
Budget Plumbing,

        Plaintiff,

No. CIV-02-602 RB/WDS

DALCO INCORPORATED OF ARIZONA,
d/b/a DIA, Inc., a foreign corporation,
and MID-STATE SURETY CORPORATION,
a foreign corporation,

        Defendants.

### DEFENDANTS DALCO INCORPORATED OF ARIZONA AND MID-STATE SURETY CORPORATION'S REQUESTED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Pursuant to the Court's August 3, 2004 Non-Jury Trial Notice, Defendants Dalco Incorporated of Arizona and Mid-State Surety Corporation hereby submit their Requested Findings of Fact and Conclusions of Law.

**I.    REQUESTED FINDINGS OF FACT.**

    **A.    Parties to Agreement.**

        1.    Budget Plumbing & Heating ("**Budget**") and Dalco Incorporated of Arizona entered ("**Dalco**") into Subcontract Agreement No. 014, Dalco Job No. 014-99-001, for work on the project called the "Elephant Butte Space Surveillance" project (hereinafter



the "**Project**") by contact signed by Budget's Richard Sainz (owner) on February 22, 2000, and signed by Dalco's James L. Gianniny on March 8, 2000. Hereinafter the subcontract agreement referenced in this paragraph 1 shall be referred to as the "**Agreement**").

    2.    Dalco did not contract with Protek Contractors, Inc. for any work. (Defendant Exhibit A; testimony of Richard Sainz, James Gianniny, Paul Smith).

**B.**    **Subcontract.**

    1.    The subcontract consisted of the "Subcontract Agreement" and the "Subcontract Agreement-Notes Sheet" consisting of seven pages. (Defendants' Exhibit A; testimony of James Gianniny; testimony of Richard Sainz; testimony of Paul Smith).

    2.    The subcontracted obligated Budget to "furnish and install complete plumbing and HVAC systems per plans and specifications for the Operations, RO and Maintenance Buildings, including but not limited to: HVAC, plumbing, reverse osmosis system, TAB, and related scope necessary to provide a complete systems per plans and specs." (Defendants' Exhibit A, Notes Sheet section 2; testimony of James Gianniny; testimony of Richard Sainz; testimony of Paul Smith).

    3.    For its work under the subcontract, Budget was to be paid a lump sum of $68,870. (Defendants' Exhibit A; testimony of James Gianniny; testimony of Richard Sainz; testimony of Paul Smith).

4. Dalco was entitled to withhold 10% retainage from payments to Richard Sainz. (Defendants' Exhibit A; Notes, Notes Sheet, note G; testimony of James Gianniny; testimony of Richard Sainz; testimony of Paul Smith).

5. There was no contract between Protek and Dalco. (Defendants' Exhibit A; testimony of James Gianniny; testimony of Richard Sainz; testimony of Paul Smith).

6. Budget was to be paid by Dalco "after contractor [Dalco] receives payment from Owner." (Defendants' Exhibit A, Notes, Notes Sheet, note H; testimony of James Gianniny; testimony of Richard Sainz; testimony of Paul Smith).

7. Plaintiff was to perform the work on the plans and specifications for the Project. (Defendants' Exhibit A; Plaintiff's Exhibit C; Plaintiff's Exhibit D; testimony of James Gianniny; testimony of Richard Sainz; testimony of Paul Smith).

8. Subcontractor was obligated to keep himself informed as to the progress of the Project and to faithfully prosecute his work at such time and in such order as the contractor may consider necessary to keep Budget's work sufficiently in advance of the other parts of the Project as to avoid delay in the conclusion of the construction as a whole, and the scheduled time of performance of Budget's work was as and when directed by Dalco, as may be modified from time to time. (Defendants' Exhibit A, Subcontract Agreement, section 4; testimony of James Gianniny; testimony of Richard Sainz; testimony of Paul Smith).

9. Dalco had the right to make changes to Budget's work. (Defendants' Exhibit A, Subcontract Agreement, section 11; testimony of James Gianniny; testimony of Richard Sainz; testimony of Paul Smith).

10. Any changes to the work were required to be agreed upon in writing, and no such agreement was valid unless signed by an authorized representative of Dalco. (Defendants' Exhibit A, Subcontract Agreement, section 11; testimony of James Gianniny; testimony of Richard Sainz; testimony of Paul Smith).

11. Budget was required to perform its subcontract work in a proper, efficient, and workmanlike manner and in a prompt, diligent, and expeditious manner so as to promote the general progress of the entire construction and not to delay or interfere or hinder the work of the contractor or any other subcontractor. (Defendants' Exhibit A, Subcontract Agreement, section 14; testimony of James Gianniny; testimony of Richard Sainz; testimony of Paul Smith).

12. If Budget failed to perform its work in a proper, efficient, and workmanlike manner, or otherwise failed to comply with the provisions of the Agreement, Dalco had the right, after giving written notice, to take any steps Dalco deemed advisable or necessary to secure labor and materials, equipment, tools, supplies, services, etc. necessary to the prosecution of the subcontract work, and the contractor may take over the same and prosecute the subcontract work to completion, and for such purpose subcontractor hereby assigned all of the same to the contractor. (Defendants' Exhibit A,

-4-

Subcontract Agreement, section 14; testimony of James Gianniny; testimony of Richard Sainz; testimony of Paul Smith).

      13.    If the contractor deemed it necessary to take over Budget's work, all monies and all losses, damages, and extra expenses were to be deducted from the subcontract price stated herein, and if such expenditures together with the losses, damages, and extra expenses exceeded the amount otherwise due the subcontractor, the subcontractor agrees to pay the contractor the full amount of such excess, together with interest, from the original billing date until paid at 18% per annum, or the maximum allowed by law in the jurisdiction of which the Project is located. (Exhibit A, Subcontract Agreement, section 14; testimony of James Gianniny; testimony of Richard Sainz; testimony of Paul Smith).

      14.    Budget was required to reimburse the contractor for any loss or damage, including but not restricted to liquidated damages, which may become due the owner by the contractor under the prime contract, including attorney's fees, for the subcontractor's failure to properly perform any and all subcontract work, failure to perform any provision of the subcontract. (Exhibit A, Subcontract Agreement, section 14; testimony of James Gianniny; testimony of Richard Sainz; testimony of Paul Smith).

      15.    Budget was required to submit proposed lower tier subcontractors to Dalco for written approval prior to utilizing any second tier subcontractors on the Project.

(Defendants' Exhibit A, section 22; testimony of James Gianniny, Richard Sainz, and Paul Smith).

### C. Payment Bond.

1. For the Project, Mid-State Surety Corporation ("**Mid-State**")issued Bond No. 715065, dated September 30, 1999, for Contract No. N68711-99-C-6439, with Dalco Incorporated of Arizona listed as the Principal (hereinafter the "**Payment Bond**"). (Defendants' Exhibit E; testimony of Paul Smith; testimony of Mid-State Surety).

2. The Payment Bond was in the amount of $189,389.00 (Exhibit E; testimony of James Gianniny; testimony of Paul Smith; testimony of Mid-State Surety).

### D. Budget's Work on the Project.

1. Budget failed to timely and properly complete its work under the Agreement, and was in material breach of that Agreement, such breaches including but not limited to:

   a. Failing to complete the Project on time;

   b. Failing to complete its work in a good and workmanlike manner;

   c. Failing to provide reverse osmosis system;

   d. Failing to provide certified payrolls;

   e. Failing to provide as-built drawings;

   f. Failing to coordinate field issues with Dalco;

   g. Failing to present properly formatted and documented pay requests;

-6-

    h.    Subcontracting portions of Budget's work without permission.

(Defendants' Exhibit A; Defendants' Exhibit N; Defendants' Exhibit K; Defendants' Exhibit L; Defendants' Exhibit Q; testimony of James Gianniny; testimony of Richard Sainz; testimony of Paul Smith; testimony of Charlene Reed; testimony of others).

**E.**    **Payment to Budget.**

    1.    Dalco paid Budget a total of $67,190.17 of Budget's $68,870.00 contract amount. (Defendants' Exhibit A, Notes Sheet; Defendants' Exhibit G, cancelled checks; testimony of James Gianniny; testimony of Richard Sainz; testimony of Paul Smith; testimony of Charlene Reed).

    2.    There were no signed changes, or change orders, between Budget and Dalco for which Dalco was obligated to pay Budget more than the contract amount of $68,870.00. (Testimony of James Gianniny; testimony of Richard Sainz; testimony of Paul Smith; testimony of Charlene Reed).

    3.    Dalco paid Budget's invoices No. 1001, 1002, 1004, 1005, 1110, and 1125, totaling $67,190.17. (Defendants' Exhibits F and G; testimony of James Gianniny; testimony of Richard Sainz; testimony of Paul Smith; testimony of Charlene Reed).

    4.    Dalco did not pay Budget's invoices No. 1503, 1381, and 1380 because those invoices were not agreed to, no written change order was issued, and Budget was not entitled to payment for those invoices which totaled $21,692.98. (Defendants' Exhibit H;

testimony of James Gianniny; testimony of Richard Sainz; testimony of Paul Smith; testimony of Charlene Reed).

**F.   Termination.**

1.   Dalco gave notice, and properly terminated Budget's Agreement in June, 2001, and took over Budget's scope of work. (Defendants' Exhibit N; testimony of James Gianniny; testimony of Paul Smith; testimony of Charlene Reed).

**G.   Work Performed by Replacement Contractor, Desert Lakes Mechanical.**

1.   After properly terminating Budget, Dalco retained the services of Desert Lakes Mechanical ("**Desert Lakes**"). (Defendants' Exhibit S; testimony of James Gianniny; testimony of Desert Lake's Carl Miller; testimony of Paul Smith; testimony of Charlene Reed).

2.   The Desert Lake contract was a cost plus contract for completion of plumbing and HVAC work at the Project. (Defendants' Exhibit S; testimony of James Gianniny; testimony of Desert Lakes' representative, Karl Miller; testimony of Paul Smith; testimony of Charlene Reed).

3.   Dalco paid Desert Lakes $19,022.87 for its work in completing Budget's scope of work. (Defendants' Exhibits U and V; testimony of James Gianniny; testimony of Desert Lakes' representative, Carl Miller; testimony of Paul Smith; testimony of Charlene Reed).

4. The amount paid to Desert Lake was reasonable (Defendants' Exhibits S, U, and V; testimony of James Gianniny, Carl Miller, Charlene Reed).

**H.  Work of US Filter.**

1. Budget was required to provide a Reverse Osmosis System for the Project. (Defendants' Exhibit A; testimony of James Gianniny; testimony of Richard Sainz; testimony of Paul Smith).

2. Budget failed to provide the Reverse Osmosis System required by the Agreement. (Defendants' Exhibits A, C, and D; testimony of James Gianniny; testimony of Richard Sainz; testimony of Paul Smith; testimony of Charlene Reed).

3. After properly terminating Budget, Dalco contracted with US Filter to provide a reverse osmosis system, such work to be competed for a total sum of $35,523.60. (Defendants' Exhibit Y; testimony of James Gianniny; testimony of US Filter; testimony of Paul Smith; testimony of Charlene Reed).

4. Dalco paid US Filter $35,523.60. (Testimony of James Gianniny; testimony of US Filter; testimony of Paul Smith; testimony of Charlene Reed).

**I.  Miscellaneous.**

1. Budget has been paid in full for its work performed on the Project, and is not entitled to take any money from Dalco or Mid-State.

2. Dalco is entitled to a judgment against Budget in the amount of $53,377.47, plus interest and reasonable attorneys' fees. (Defendants' Exhibits A, S, T, U,

V, W, X, Y; testimony of James Gianniny; testimony of Richard Sainz; testimony of Paul Smith; testimony of Mid-State Surety; testimony of Charlene Reed).

## II.   CONCLUSIONS OF LAW.

A.   Plaintiff Protek Contractors, Inc., d/b/a Budget Plumbing, had no contract with Dalco Incorporated of Arizona, d/b/a DIA Inc., did not work on the Project, and has no standing to bring this lawsuit.

B.   There was a valid and binding contract between Budget and Dalco.

C.   There was no contract between Protek Contractors, Inc. and Dalco.

D.   Under the Agreement, Budget was required to provide all labor, materials, and equipment for furnishing and installing a complete plumbing and HVAC system for the Project, including HVAC, plumbing, reverse osmosis system, TAB, and all related scope necessary to provide a complete system per plans and specs.

E.   For its work, Budget was to receive a lump sum of $68,870.

F.   Budget was required to perform its work in a good and workmanlike, efficient manner.

G.   Any changes to the Agreement were required to have been in writing, signed by Dalco, prior to becoming effective, and this provision of the Subcontract Agreement is valid and enforceable.

H.      Dalco had the right to terminate Budget if Budget did not perform its obligations under the contract, and this provision of the Subcontract Agreement is valid and enforceable.

I.      If Budget failed to perform its obligations under the contract, Dalco had the right to take over the work, hire other contractors to complete Budget's scope of work, and Budget was required to pay for the completion of that work. This provision is valid and enforceable.

J.      Budget was paid $67,190.17 of its $68,870.00 contract.

K.      There were no valid changes, written or oral, to the Subcontract Agreement which changed the contract amount of $68,870.00.

L.      Budget was paid all but $1,679.83 of its Agreement amount.

M.      Budget was overpaid for the work it performed.

N.      Budget materially breached the Agreement by failing to timely complete its work in a good and workmanlike manner, failing to timely provide submittals, failing to provide the materials necessary to complete its work under the Agreement, failing to provide the reverse osmosis system, failing to cooperate and coordinate with Dalco in the prosecution of the work, subcontracting portions of its work without the agreement of Dalco, not providing adequate pay applications, and otherwise breaching the Subcontract Agreement and not performing its work in a good and workmanlike manner.

O.      Dalco properly terminated Budget's subcontract.

P.  Dalco properly took over Budget's work on the Project.

Q.  Dalco was entitled to subcontract with Desert Lakes to complete Budget's scope of work.

R.  Plaintiff is not entitled to any recovery or damages on its Complaint, and shall take nothing from Defendant Mid-State or Dalco.

S.  Dalco properly contracted with Desert Lakes.

T.  Dalco is entitled to a judgment for $19,911.36, plus interest, for amounts it paid Desert Lakes to complete Budget's scope of work. Dalco is entitled to a judgment for $510.83 for materials it purchased from Black Range Enterprises to complete Budget's scope of work.

U.  Dalco is entitled to recover a judgment $35,253.60 for amounts it paid US Filter to provide the reverse osmosis system for the Project.

V.  Dalco is entitled to a total judgment of $53,377.47, plus interest, the cost of this action, and attorneys' fees.

W.  Mid-State issued a Payment Bond for the Project.

X.  The Payment Bond is limited to its terms, conditions, and is to be interpreted pursuant to the Federal Miller Act, 42 U.S.C. §270.

Y.  Protek Contractors, Inc. is not a proper claimant on the Payment Bond.

Z.  Budget's claim is not for work or materials that were incorporated into the Project, and therefore not properly a Miller Act claim.

AA. Plaintiff did not give proper timely notice under the Payment Bond.

BB. Defendants are entitled to offset their recovery against any recovery by Plaintiff.

CC. Plaintiff shall receive noting on its Payment Bond claim against Mid-State.

DD. The Subcontract Agreement does not provide for attorneys fees to either party.

EE. There is no statutory basis on which to award Plaintiff attorneys fees.

FF. Plaintiff is not entitled to attorneys fees, interest, or costs from Defendants.

GG. Plaintiff did not plead oral modification of the Subcontract Agreement in the Complaint, and Plaintiff is prohibited from raising that issue at trial.

HH. The Court reserves jurisdiction to receive post-trial motions and motions regarding taxable costs.

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By: _____
David W. Bunting
Attorneys for Defendants Dalco Incorporated of
    Arizona and Mid-State Surety Corporation
Post Office Box 1888
Albuquerque, New Mexico 87103
Telephone: 505-766-7545

We hereby certify that a copy
of the foregoing pleading was
mailed on October  12   ,
2004 to counsel as follows:

Sean R. Calvert
Calvert * Menicucci, P.C.
PO Drawer 6305
Albuquerque, NM 87197-6305

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By: _____
    David W. Bunting

-14-